IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FAYE RENNELL HOBSON )
)
v. ) NO. 3:17-1485
)
LLOYD AUSTIN, )
Secretary, Department of Defense[1] )

**TO:  Honorable William L. Campbell, Jr., District Judge**

R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered December 18, 2017 (Docket Entry No. 8), this *pro se* action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(a)( and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Pending before the Court are cross motions for summary judgment filed by the parties. *See* Plaintiff's motion for summary judgment (Docket Entry No. 87) and Defendant's motion for summary judgement (Docket Entry No. 135). For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion be denied and Defendant's motion be granted.

I. BACKGROUND

Faye Rennell Hobson ("Plaintiff") is a resident of Clarksville, Tennessee and a former employee of the United States Department of Defense Education Activity ("DoDEA"), an agency within the Department of Defense ("DoD"). Plaintiff began working as a teacher with the DoDEA in 2002, and held several different teaching jobs within the DoDEA over the course of the next decade and a half. Some of the jobs were within the United States at the Fort Campbell Military

---

[1] Lloyd Austin is the current Secretary of Defense and is substituted as the named defendant in this action. *See* Rule 25(d) of the Federal Rules of Civil Procedure.

Installation ("Fort Campbell") and some were overseas in Germany and Guam, and, most recently, in South Korea, where Plaintiff asserts that she taught from 2010-2016. Plaintiff's last teaching position with the DoDEA was as a high school teacher at the Fort Knox, Kentucky Army Base ("Ft. Knox") during the 2016-2017 school year. Plaintiff resigned from her employment at Ft. Knox and from the DoDEA on October 14, 2016.[2]

During Plaintiff's employment with the DoDEA, she filed several equal employment opportunity ("EEO") complaints and pursued several lawsuits based upon various incidents of alleged employment discrimination and retaliation against her during her employment. *See* Complaint (Docket Entry No. 1) at ¶¶ 10-11. *See also Hobson v. Gates*, 3:10-00964; *Hobson v. Mattis*, 3:14-01540; *Hobson v. Carter*, 3:15-00741; and *Hobson v. Carter, et al.*, 3:16-00744. The instant lawsuit covers the time period during her final time in Korea and while she was at Ft. Knox after leaving Korea.

While teaching in Korea, Plaintiff desired to obtain a teaching position at Ft. Campbell, which is close to her home where her retired husband resides, but was not selected for any positions. *Id*. at ¶ 11. Juxtaposed against Plaintiff's desire to return to Ft. Campbell was her request for a reasonable accommodation for physical and mental issues from which she suffers. Beginning in 2015, Plaintiff requested that she be assigned to a teaching assignment at Ft. Campbell so that she would be near her stateside doctors. During 2016, DoDEA officials made the decision to accommodate Plaintiff by assigning her from her overseas teaching position to a teaching position in the contiguous United States ("CONUS") which would permit her to be closer to medical care within the CONUS. Although a teaching assignment in North Carolina for a special education position for the 2016-2017 school year was initially offered to Plaintiff, she declined that teaching assignment. DoDEA officials then searched for additional vacant teaching assignments and offered Plaintiff a high school teaching assignment at Fort Knox for the 2016-2017 school year, which she ultimately accepted.

---

[2] *See* Docket Entry No. 47-1.

Although Plaintiff accepted the Ft. Knox teaching assignment and began working there, she was displeased with several aspects of the job change. First, Ft. Knox is several hundred miles away from Plaintiff's home in Clarksville. Because of the length of the daily commute from her home to Ft. Knox, Plaintiff had to find and pay for housing in the Ft. Knox area. Because her personal doctors were in the Clarksville/Ft. Campbell area, she also had to make lengthy trips and take leave from work in order to see her doctors. Second, Plaintiff did not receive the salary that she expected to receive at Ft. Knox. While in Korea, Plaintiff was paid as a "Masters +30" pay level, but she was paid at a lower "Masters, Step 15" pay level at Ft. Knox. Finally, during the fall of 2016, the DoDEA directed that withdrawals be made from Plaintiff's paychecks to reimburse the DoDEA for overpayments that had been made to Plaintiff. Plaintiff contends that all of these factors caused her to experience unnecessary stress, exacerbating her anxiety and led to her resigning from the Ft. Knox teaching assignment and her employment with the DoDEA in October 2016.

Believing that she had suffered from discriminatory and retaliatory treatment regarding her assignment to Ft. Knox instead of Ft. Campbell, Plaintiff thereafter filed two administrative complaints of employment discrimination with the DoDEA's Diversity Management and Equal Opportunity Office ("DMEO"). In her first complaint, No. DE-FY16-144/2017-CONF-008 ("Administrative Complaint #144"), Plaintiff complained that she was subjected to discrimination based on physical and mental disabilities (injured right hand, osteoarthritis, and anxiety disorder), race (African-American), and retaliation for her prior EEO activity when she was denied her requested reasonable accommodation of a reassignment to a teaching position at the Ft. Campbell Middle School, when she was denied credits and years of experience that impacted her pay, and when her pay was wrongfully reduced because of debt tickets that had been lodged against her by the DoD.[3] In her second complaint, No. DE-FY17-003/2017-CONF-014 ("Administrative Complaint #003"), Plaintiff reasserted the bulk of her prior complaint, added an allegation that she

---

[3] *See* Complaint (Docket Entry No. 1) at 1-2 and 38-51.

had been constructively discharged from the Ft. Knox teaching position, and linked discrimination on account of her disability, race, and prior EEO activity to the alleged constructive discharge.[4]

After the processing and review of her administrative complaints was completed and did not result in administrative relief for Plaintiff,[5] she filed this *pro se* lawsuit against the Secretary of the United States Department of Defense ("Defendant"). *See* Complaint (Docket Entry No. 1). Plaintiff brings claims of unlawful employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA"). *Id*. at 1 and 4-5.[6] As relief, Plaintiff seeks compensatory damages, punitive damages, an award of back pay, and an order that Defendant re-employ her. *Id*. at 5.

In her complaint, Plaintiff contends that she is pursuing the issues that were part of Administrative Complaint #144, which she sets out as:

> whether plaintiff was subject to discrimination based on her disabilities (physical: injured right hand and osteoarthritis, hypertension, palpitations, chronic renal insufficiency, reflux diseases, iron deficiency anemia, hyperlipidemia, impaired fasting glucose, and Anxiety disorder), race (African-American) and reprisal (prior EEO Activity) when:
>
>> A. On August 12, 2016, she was denied a medical reassignment to a position at Fort Campbell Middle School (Wassom). A position in which the plaintiff was/is qualified and highly certified to teach.
>>
>> B. On August 15, 2016, Ms. Patti Ross, Supervisory Human Resources (HR) Specialist, Human Resources Directorate, DoDEA (a DoDEA HR person that the plaintiff has filed approx. 4 EEO complaints that involved Ms. Ross) denied plaintiff years of teaching experience in which she was previously awarded and denied 64 out of 94 graduate credits from her Masters +30 pay grade.

---

[4] *See* Docket Entry No. 50-1 at 82-96.

[5] The history of the administrative proceedings, which are not necessary to be set out herein, are summarized in the previous Report and Recommendation entered February 11, 2019 (Docket Entry No. 61).

[6] Although Plaintiff also states that she brings her lawsuit under 42 U.S.C. § 1981(a) and that jurisdiction exists under 28 U.S.C. § 1367 for state law claims, *id*. at 1 and 2, she does not specifically set out counts for relief under Section 1981 or state law, as she does for her claims under Title VII and the ADA, and has not set forth any arguments pertaining to Section 1981 or state law.

4

> C. Beginning on September 17, [2016], the DoDEA HR directed the Defense Finance and Accounting Service (DFAS) to reduce plaintiff's pay, as well as to collect erroneous debts, by way of DoDEA created debt tickets. Plaintiff's pay changed from the agreed upon amount of $76,800.00 to approx. $65,000.00.

*See* Complaint at 1-2. Although Plaintiff also raised claims in her complaint based upon the allegations of constructive discharge that were set out in Administrative Complaint #003, *id.* at 2, the Court dismissed the constructive discharge claim and any claim contained in Administrative Complaint #003 as untimely. *See* Order entered March 22, 2019 (Docket Entry No. 67).[7] Defendant thereafter filed an answer (Docket Entry No. 74), and the parties were given a period for pretrial activity in the case pursuant to scheduling orders (Docket Entry Nos. 78, 95, and 116). A jury trial in the case has been demanded by Defendant but a trial date has not yet been set.[8]

## II. MOTIONS FOR SUMMARY JUDGMENT AND RESPONSES

Plaintiff argues that she is entitled to summary judgment as a matter of law on each of her claims. In her supporting memorandum (Docket Entry No. 88), she contends that there are no genuine material facts at issue and that the Court should grant her judgment on her discrimination and retaliation claims. Plaintiff argues that she has set forth conclusive proof of discrimination and retaliation through documentary evidence of workplace events that occurred as early as 2009 and continued until the time of her resignation, through the Reports of Investigation ("ROI") and Final Agency Decisions ("FAD") from her EEO actions, and through Defendant's discovery responses. Plaintiff argues that Defendant has not supplied any evidence that negates her allegations of disability discrimination, racial discrimination, and retaliation and, thus, there is no need for a jury to hear her claims in order for her to prevail. Plaintiff supports her motion with 12 exhibits, *see*

---

[7] Plaintiff's motion for reconsideration of the dismissal of these claims was denied, *see* Order entered April 11, 2019 (Docket Entry No. 73), and her appeal to the Sixth Circuit Court of Appeals was dismissed. *See* Order entered April 30, 2019 (Docket Entry No. 75).

[8] Plaintiff originally demanded a jury but has recently filed a motion to withdraw her jury demand. *See* Motion (Docket Entry No. 145). Defendant has not consented to the withdrawal of a jury trial.

Docket Entry Nos. 88-1 through 88-13, and by referring the Court to the objection (Docket Entry No. 62)[9] that she filed to the previously entered Report and Recommendation.

In response to Plaintiff's motion, Defendant first argues that Plaintiff's motion is procedurally improper because it does not comply with the requirement of Local Rule 56.01(b), which requires that the motion be supported with a statement of undisputed material facts that includes citations to the record in the case. Defendant further argues that many of Plaintiff's supporting exhibits are irrelevant or objectionable (or both) because they cannot be presented in a form that would be admissible. With respect to Plaintiff's contention that she is entitled to summary judgment on her claims, Defendant argues that Plaintiff has not shown the absence of genuine issues of material fact and that her evidence compels a finding that she be granted summary judgment in her favor as a a matter of law. *See* Defendant's Response (Docket Entry No. 91). In support of its response, Defendant relies upon excerpts from the ROIs for Plaintiff's Administrative Complaints #114 and #003. *See* Docket Entry Nos. 91-1 and 91-2. In reply, Plaintiff fails to directly explain why she did not submit a Rule 56.01(b) statement of undisputed material facts, but requests that the Court and Defendant review her filings in objections to the prior Report and Recommendation, as well as her filings in opposition to Defendant's motion to dismiss that were earlier filed in this case and argues that she had met her burden of proving discrimination and retaliation on all claims by her submissions through the instant litigation. *See* Plaintiff's Reply (Docket Entry No. 93).

In its motion for summary judgment, Defendant asserts that it took steps to offer Plaintiff a reasonable accommodation for her medical issues by assigning her to a stateside teaching position and eventually to Ft. Knox, even though this assignment was not Plaintiff's preferred location. It further contends that both the pay disparity and paycheck debt withdrawals about which Plaintiff complains were human resource actions taken in accordance with relevant facts and policies and that there is no evidence supporting a finding that discriminatory or retaliatory motivations played a role in the actions. Defendant argues that it is entitled to summary judgment because Plaintiff cannot

---

[9] Plaintiff's objection was itself supported by 14 exhibits. *See* Docket Entry Nos. 62-1 through 62-14.

support a *prima facie* case for any of her claims, nor does she have evidence showing that Defendant's proffered legitimate reasons supporting the challenged actions were a pretext for disability or racial discrimination or unlawful retaliation. Defendant supports its motion with a Rule 56.01(b) statement of undisputed material facts ("SUMF") (Docket Entry No. 137), a memorandum (Docket Entry No. 139), with excerpts from Plaintiff's deposition (Docket Entry No. 139-2), and with three other exhibits (Docket Entry Nos. 139-1, 139-3, and 139-4).

In response to Defendant's motion, Plaintiff has filed a "petition for order of protection & disabuse of Defendant's motion for summary judgment." *See* Petition & Disabuse (Docket Entry No. 140). Plaintiff does not offer any rebuttals that are specifically directed at the distinct arguments for summary judgment on her claims that are raised by Defendant and she has not filed a response to Defendant's SUMF, but Plaintiff contends that in her prior filings in this case, to which she refers the Court, she has already established *prima facie* cases of race discrimination, disability discrimination, and retaliation based on material facts, has shown and listed numerous undisputed material facts, and has discussed the issues of law around those facts that show that she is entitled to summary judgment as a matter of law. *See* Petition & Disabuse at 6-7. She contends that Defendant has not shown a "genuine dispute with legal argument" and has not shown why there still should be a trial. *Id*. at 7. Thus, Plaintiff contends that Defendant's motion should be denied, her motion should be granted, and she should be awarded her request for relief. *Id.*[10]

---

[10] The bulk of Plaintiff's response and the exhibits attached thereto are devoted to what appears to be an argument that Defendant's motion should be disregarded "as irrelevant, inaccurate, innocuous and intentionally" and "unlawfully" submitted into the record and that Plaintiff should be "protected" because she is a whistle blower who has obtained knowledge through her prior federal case of "primary source documents." *See* Petition & Disabuse at 2-5. Plaintiff requests that "if this Court and/or Current-Decision Maker is unable to ORDER PROTECTION FOR PLAINTIFF-WHISTLEBLOWER HOBSON, the Plaintiff requests REMAND of her case to an appropriate Decision-Maker with the authority to simultaneously adjudicate and protect Plaintiff-Whistleblower Hobson for her knowledge, disclosure and possession of primary source document related to misconduct of Agency officials intentionally misusing the EAS Scoring rubric impacting applicants seeking positions in the Agency." *Id.* at 6.

While, as a general matter, protections for whistle blowers do exist under federal law in certain circumstances, the instant case is not a case about "whistle blowing," and Plaintiff does not set forth a legally sound basis that supports disregarding Defendant's motion, "remanding" this case to a unspecified "decision maker," or "protecting" Plaintiff from, presumably, the dismissal of her case.

7

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"The standards...for summary judgment do not change when, as here, 'both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (*quoting Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). When presented with cross-motions for summary judgment, the Court " must evaluate each party's motion on its own merits, taking care in each instance to draw

all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co.*, 929 F.2d at 248.

### IV. TITLE VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In addition to protecting against discrimination, Title VII also declares that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

A claim under Title VII must be supported by direct evidence of unlawful conduct or by circumstantial evidence that raises an inference of unlawful conduct. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Direct evidence is evidence, which if believed, requires no inferences to conclude that unlawful conduct was a motivating factor in the challenged action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).[11] If the plaintiff relies upon circumstantial evidence, the Court utilizes the burden shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff is first required to establish a *prima facie* case of unlawful conduct and, if so, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant articulates such a reason, the presumption drops from the case, and the plaintiff must then show that the reason offered by the defendant is a pretext for unlawful conduct. *Id.* at 508. Whatever method

---

[11] For example, an actual statement by an employer "proclaiming his or her ... animus" constitutes direct evidence of discrimination. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998) (*quoting Robinson v. Runyon*, 149 F.3d 507, 512–14 (6th Cir.1998)).

of proof is used, the ultimate burden is on the plaintiff to convince the trier of fact, by a preponderance of the evidence, that the plaintiff was the victim of unlawful conduct under Title VII. *Id*. at 518. The showing that must be made in order to prevail on a discrimination claim and a retaliation claim differs slightly under Title VII. For a discrimination claim, the plaintiff must merely show that the suspect classification at issue was a motivating factor in the employer's challenged conduct. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). A Title VII retaliation claim, however, "require[s] proof that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* at 352.

## V. ADA/REHABILITATION ACT

Although Plaintiff has brought her failure to accommodate claim under the ADA, it is the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*. ("Rehabilitation Act"), that provides the legal authority for federal employees alleging disability based discrimination. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007); *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004). Plaintiff's reliance on the ADA is not fatal, however, because both acts share the same substantive standards. *Jones, supra*.[12]

Disability discrimination can be based upon an employer's refusal to make "reasonable accommodations" for the employee's disability. *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)*; Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997). In making determinations about a reasonable accommodation request, an employer has a duty to engage in the interactive process with an employee by communicating with the employee and making a "good-faith exploration of possible accommodations." *Kleiber*., 485 F.3d at 871; *See also* 29 C.F.R. § 1630.2(o)(3). "The purpose of this process is to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)). "An employer has sufficiently acted

---

[12] Cases addressing the ADA are generally relevant for purposes of resolving claims brought under the Rehabilitation Act. *Doe v. Salvation Army in U.S.*, 531 F.3d 355, 357 (6th Cir. 2008).

10

in good faith when it readily meets with an employee, discusses any reasonable accommodations, and suggests other possible positions for the Plaintiff." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 203 (6th Cir. 2010).

The plaintiff bears the burden of presenting evidence that the plaintiff requested an accommodation that is reasonable. *Kleiber*, 485 F.3d at 870; *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996) ("the disabled individual bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable."). For a plaintiff to prevail on an allegation of disability discrimination based on failure to accommodate, the plaintiff must first establish a *prima facie* case by showing that: (1) the plaintiff is an individual with a disability under the Act; (2) the plaintiff is otherwise qualified for the position at issue; (3) the agency was aware of the plaintiff's disability; (4) an accommodation was needed, i.e., a causal relationship existed between the disability and the request for accommodation; and, (5) the agency failed to provide the necessary accommodation. *Gaines v. Runyon*, 107 F.3d 1171, 1175-76 (6th Cir. 1997). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate that the employee could not be reasonably accommodated without imposing an undue hardship on the operation of its programs. *Id*. at 883.

## VI. CONCLUSIONS

A. Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment should be denied. It suffers from a procedural shortcoming and it is substantively deficient from an evidentiary standpoint as to each of her claims..

Plaintiff's motion is procedurally improper because it fails to comply with Local Rule 56.01(b), which requires that a motion for summary judgment "be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." In the statement, each fact "must be set forth in a separate, numbered paragraph" and "must be supported by specific citation to the record." *Id*. The rule itself states that "[t]he

11

requirement that a statement of undisputed material facts in the described format must accompany any motion for summary judgment applies to *pro se* parties." *Id*.

To be clear, Plaintiff did include in her supporting memorandum a narrative statement of undisputed facts. *See* Plaintiff's Memorandum at 2-5. However, such a narrative statement does not suffice as the equivalent of the Local Rule 56.01(b) statement. Further, in her memorandum and in her reply, Plaintiff refers the Court to the filings that she has made in objection to the prior Report and Recommendation and in response to the motion to dismiss filed by Defendant. *Id.;* Reply at 1-2. However, a reference to prior filings in this case does not suffice as the equivalent of the Local Rule 56.01(b) statement. This is especially so when none of the prior filings are actually the type of statement of undisputed material facts that is contemplated by Local Rule 56.01(b). Finally, although Plaintiff's motion is supported by exhibits, to which she refers in her supporting memorandum, although the record in this case is voluminous, and although Plaintiff offers in her reply to "resubmit all documents previously submitted in this case," *see* Reply at 3-4, the mere submission of documents or other evidence into the record is not the actual issue. The purpose of the Local Rule 56.01(b) statement is to "assist the Court in ascertaining whether there are any material facts in dispute" when determining whether summary judgment is warranted in favor of the moving party. This is especially pertinent in a case such as the instant one in which there are hundreds, if not thousands, of pages of documents already in the record.

Plaintiff's non-compliance with Local Rule 56.01(b) is, by itself, a sufficient basis to deny her motion. *See McClure v. Johnson*, 2019 WL 1316028 at *1 (M.D.Tenn. Mar. 22, 2019) (adopting recommendation for denial of *pro se* plaintiff's summary judgment based partly upon the plaintiff's failure to file Local Rule 56.01(b) statement). *See also Matthews v. Copeland*, 286 F.Supp.3d 912, 915 (M.D.Tenn. 2017) ("The Magistrate Judge did not err in recommending dismissal partly on the grounds that Matthews did not comply with the requirement of Local Rule 56.01.").

But even if the Court excuses Plaintiff's non-compliance with Local Rule 56.01, her motion fails on the merits. To prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should

12

be granted in the moving party's favor. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). As the party who bears the ultimate burden of persuasion at trial on her claims, *St. Mary's Honor Ctr.*, 509 U.S. at 518, and to succeed on her motion, Plaintiff must present evidence so one-sided that, under the relevant law, no reasonable jury could find against her and a judgment in her favor is the only reasonable conclusion that could be reached. Plaintiff's motion falls far short of meeting this standard with respect to her claims.[13]

Plaintiff's motion is readily denied with respect to her racial discrimination claim. Contrary to Plaintiff's argument, *see* Plaintiff's Memorandum at 9-10, she offers no direct evidence of racial discrimination as to any of the challenged employment actions at issue. First, the emails relied on by Plaintiff fail to actually include any evidence of unmistakable and direct racial animus that shows racial hostility. As such, the emails are not direct evidence of racial discrimination. *Abbott*, 348 F.3d at 542. Second, the emails were sent several years prior to the events at issue and are unrelated to the actual employment actions at issue in this case. Accordingly, the evidence offered by Plaintiff is of marginal relevance and fails to support her assertion that she has direct evidence in support of her claim of racial discrimination. Both of these factors make the instant case clearly distinguishable from *Fite v. Comtid Nashville, LLC*, 686 F.Supp.2d 735, 750-51 (M.D.Tenn. 2010), to which Plaintiff refers to in her Memorandum. *Fite* involved direct evidence of ethnic slurs made by a supervisor a mere three weeks prior to the challenged employment decision.

Plaintiff also fails to offer evidence that satisfies a *prima facie* case of racial discrimination based upon circumstantial evidence. To demonstrate a *prima facie* case of discrimination, Plaintiff must show that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was not selected for a position or promotions in lieu of someone outside the protected class or she was treated differently than similarly situated, non-protected employees with respect to the conduct at issue. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). Even if the Court assumes Plaintiff satisfies the first

---

[13] Although Plaintiff includes in her motion arguments regarding her constructive discharge claim, *see* Plaintiff's Memorandum at 5, 7, and 12, the Court disregards these arguments because the constructive discharge claim has already been dismissed by the Court.

13

three elements of a *prima facie* case, she has not pointed to any evidence that satisfies the showing required by the fourth element. *See* Plaintiff's Memorandum at 11. Although Plaintiff alleges that she was treated differently than white DoDEA employees, general allegations are not sufficient to support a *prima facie* case. *Stewart v. Esper*, 815 Fed.App'x 8, 17 (6th Cir. 2020); *Frazier v. USF Holland, Inc.*, 250 Fed.App'x 142, 147 (6th Cir. 2007). Plaintiff must provide evidence of specific individuals outside the protected class who were similarly situated with her yet were treated more favorably with respect to the challenged employment conduct at issue in her case. *Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019); *Dickins v. Interstate Branch Corp.*, 384 Fed.Appx. 465, 468 (6th Cir. 2010); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992). Plaintiff has not supported her motion with any such evidence.

Plaintiff's argument that she is entitled to summary judgment in her favor on her retaliation claim fares little better. Plaintiff offers no direct evidence of a retaliatory animus linked to any of the challenged employment decisions at issue. Once again, the evidence that she appears to point to as direct evidence of retaliation, *see* Plaintiff's Memorandum at 11-12, is not direct evidence supporting her claim because the evidence requires inferences to conclude a retaliatory animus exists, consists of emails occurring several years prior to the events at issue, and is not actually related to the challenged employment actions.

Plaintiff's attempt to support her claim with circumstantial evidence through a *prima facie* case is similarly lacking. To establish a *prima facie* case of retaliation, Plaintiff must show: (1) she engaged in activity protected by Title VII; (2) the exercise of her protected rights was known to Defendant; (3) Defendant thereafter took an action that was materially adverse to her; and, (4) her protected activity was the but-for cause of the adverse employment action. *Kenney v. Aspen Tech, Inc.*, 965 F.3d 443, 448 (6th Cir. 2020). The fourth element of the *prima facie* case focuses on the causal connection between protected activity and the challenged employment action. *See Wingo v. Michigan Bell Tel. Co.*, 815 Fed.App'x 43, 46 (6th Cir. 2020). To establish a causal connection, Plaintiff must produce sufficient evidence from which a reasonable inference could be drawn that

Defendant would not have taken the challenged action had she not engaged in the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013).

The bulk of Plaintiff's supporting memorandum on her retaliation claim is directed at whether she suffered an employment action that was materially adverse to her. *See* Plaintiff's Memorandum at 11-13. However, this argument is not sufficient to carry her motion because, even if the Court assumes for the purpose of deciding her motion that she satisfies the first three elements of her *prima facie* case, she offers no evidence that satisfies the casual connection element. Indeed, Plaintiff offers no real argument in her memorandum as to this element. *Id*. While the *prima facie* burden is not an onerous one for a plaintiff asserting a retaliation claim, the *prima facie* case is not satisfied merely by evidence that satisfies the first three elements and an allegation that retaliation surely must be the actual motivation for the challenged employment action. *Wingo, supra.* A plaintiff must set forth some evidence that raises a reasonable inference of a casual connection between the protected activity and the challenged employment action. Plaintiff simply has not produced such evidence in support of her motion. The mere fact that some of the decision makers for the challenged employment actions in this case have been previously named by Plaintiff in her EEO complaints or had roles in employment actions that she has previously challenged is not, in and of itself, sufficient to infer a casual connection.

Finally, Plaintiff has not offered sufficient evidence to support an award of summary judgment to her on her failure to accommodate/disability discrimination claim, and her motion should be denied as to this claim. The material facts of this claim are essentially undisputed and are readily discerned from the record despite Plaintiff's failure to file a Rule 56.01(b) statement of undisputed material facts. During 2015, Plaintiff made requests to DoDEA officials to be transferred to Ft. Campbell as an accommodation for her medical issues. After some delay in getting Plaintiff's request to the proper officials, Defendant began the interactive process of determining the necessity of a reasonable accommodation and concluded that assigning Plaintiff to a teaching position in the CONUS was the appropriate accommodation for her medical needs. Defendant then located a vacant position in North Carolina, which was offered to Plaintiff and which she declined. After

15

Plaintiff continued to request an assignment to a position at Ft. Campbell and identified a vacant position at the Ft. Campbell middle school, Defendant looked into the matter and advised Plaintiff that she was not eligible to be placed into the Ft. Campbell position because it was restricted to internal transferees, but she could be assigned to a vacant position at Ft. Knox that Defendant had located. Plaintiff ultimately accepted the Ft. Knox assignment.

Plaintiff offers two theories for why Defendant should be deemed liable on her failure to accommodate claim. The first theory is that the only reasonable accommodation for her was an assignment to Ft. Campbell. Thus, she contends that the offered positions in North Carolina and Ft. Knox were unreasonable accommodations that failed to satisfy Defendant's obligation under the Act. However, "[t]he employer need not provide the accommodation that the employee requests or prefers." *Trepka v. Board of Educ.*, 28 Fed.App'x 455, 459-60 (6th Cir. 2002). If a different reasonable accommodation is provided, "an employee is not entitled to a particular reasonable accommodation." *Id.* "[A]n employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir.1996) (*citing Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986). To succeed on her claim, Plaintiff must show not only her entitlement to her requested accommodation, but also to the inadequacy of the offered alternatives." *Trepka*, 28 Fed.App'x at 460.

Plaintiff's theory fails because she has not set forth any evidence supporting her contention that a transfer to Ft. Campbell was the only reasonable accommodation that could be offered to her. The medical evidence provided in 2015 as support for Plaintiff's accommodation request stated that Plaintiff "has several medical conditions which the specialists would like her to have periodic follow up" and that "[s]he would best be served being in a CONUS location or OCONUS with the available specialties (cardiology, nephrology, GI, hematology).[14] Subsequently in 2016, supporting medical evidence was provided that stated that Plaintiff "has several medical conditions for which she requires periodic follow up with multiple subspecialties" and that "[s]he would be best serviced by being in a CONUS location with cardiology, nephrology, gastroenterology, and hematology

---

[14] *See* January 20, 2015, e-mail from Dr. Warner (ROI; Docket Entry No. 136-2 at 8).

16

subspecialists available."[15]  Although the 2016 medical evidence also noted that Plaintiff receives her routine and primary medical care at the Gold Army Medical Home in Ft. Campbell, the recommendation was not for placement only near Ft. Campbell or for a placement only near medical care providers with whom Plaintiff already had relationships.  There is no evidence in the record that the only accommodation that could reasonably permit Plaintiff to have the ability to visit medical care specialists and subspecialists was for her to be reassigned to Ft. Campbell.  Plaintiff has simply not shown any evidentiary basis for a conclusion that she was entitled to be reassigned to Ft. Campbell as an accommodation or that the Ft. Knox assignment was inadequate to meet the needs set out in the supporting medical evidence.  The Court does not question Plaintiff in her contention that being assigned to Ft. Campbell would have been more practical and easier for her, but that is not the test.  There is no evidence in the record supporting a conclusion that Defendant violated the Rehabilitation Act by assigning Plaintiff to Ft. Knox instead of Ft. Campbell.[16]

Plaintiff's second theory is that she was denied an assignment to a vacant English teaching position at the Wassom Middle School at Ft. Campbell for the 2016-17 school year, an assignment that would have been an easy reasonable accommodation.[17]  It is not disputed that Plaintiff notified DoDEA officials about the vacancy when it was posted in June 2016 and requested to be assigned to the position but that she was not assigned to the position.  She asserts that she was qualified for the position, and had actually taught at that particular middle school previously, and that no reason existed to not assign her to the position as an accommodation.

An employer's duty to accommodate may include reassignment to vacant positions comparable to what the disabled employee previously held.  *Kleiber*, 485 F.3d at 869; *Hedrick v.*

---

[15] *See* April 4, 2016, Memorandum from Dr. Allen.  (ROI; Docket Entry No. 136-2 at 7).

[16] *Obnamia v. Shinseki*, 569 Fed.App'x 443, 445 (6th Cir 2014), which is cited by Plaintiff in her memorandum, *see* page 7, does not support Plaintiff's claim.  In fact, *Obnamia* involved a plaintiff who, like Ms. Hobson, was unable to support her claims that the accommodations that she sought were required.

[17] Although Plaintiff also asserts in her memorandum that she was repeatedly not selected for vacant teaching positions at Ft. Campbell, the only teaching position at issue for her failure to accommodate claim is the Wassom Middle School English teaching position that is specifically alleged in her complaint.

17

*Western Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004); *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 256 (6th Cir. 2000). However, the plaintiff bears the burden of establishing that a vacant position exists and that she was qualified for the position. *Willard v. Potter*, 264 Fed.App'x. 485, 487-88 (6th Cir. 2008); *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004). In response to Plaintiff's contention that she should have been assigned to the Wassom Middle School position, Defendant contends that the position was restricted by the applicable Master Labor Agreement to applicants from current educators already employed at Fort Campbell schools and that Plaintiff was not eligible for the position because she was a transferee from the DoDEA-Pacific.[18] Plaintiff fails to address Defendant's assertion in her reply and offers no rebuttal evidence showing that she was, in fact, eligible for assignment to this position. Defendant was under no obligation to assign Plaintiff to a position for which she was not eligible, to "waive legitimate, non-discriminatory employment policies" to accommodate her, or to "violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy." *Hedrick*, 355 F.3d at 457 (citing *Burns*, 222 F.3d at 257). *See Bush v. Compass Grp. USA, Inc.*, 683 Fed.App'x 440, 450 (6th Cir. 2017) (the plaintiff's requested accommodation of transfer to a vacant position was unreasonable as a matter of law because the transfer would have required the employer to waive its non-discriminatory transfer policy). Plaintiff has not offered any evidence showing that she was eligible for assignment to the Wassom Middle School position as a teacher coming from the DoDEA-Pacific and, thus, that Defendant violated the Rehabilitation Act by not assigning her to the position.

B. Defendant's Motion For Summary Judgment

Defendant is entitled to summary judgment in its favor on each of Plaintiff's claims. As previously noted, Plaintiff failed to file a response to Defendant's SUMF. Pursuant to Local Rule 56.01(f), that failure makes the facts asserted by Defendant undisputed for the purposes of summary

---

[18] *See* Defendant's Response at 10; July 13, 2016, e-mail from Cheryl Adams. (ROI; Docket Entry No. 91-1 at 6-7); Declaration of Cheryl Adams (Docket Entry No. 88-9 at 8).

judgment. Accordingly, there are no genuine issue as to any material fact, and all that remains to be determined is whether Defendant is entitled to judgment as a matter of law.

Plaintiff, as the non-moving party, must be given the benefit of all reasonable inferences in her favor and the benefit of having facts viewed in the light most favorable to her. Nonetheless, when the undisputed facts as set forth by Defendant are coupled with the dearth of evidence provided by Plaintiff to support her claims, as discussed in the analysis of Plaintiff's motion, there is simply no basis upon which any reasonable jury could find in favor of Plaintiff on her claims.

The legal analysis of Plaintiff's claims discussed in the review of her motion for summary judgment applies equally to review of Defendant's motion and compels a finding that summary judgment is warranted in favor of Defendant. Plaintiff has presented no direct evidence of racial discrimination or retaliation and no evidence satisfying a *prima facie* case for her racial discrimination claim and or her retaliation claim. This alone is sufficient to grant Defendant's motion as to these two claims. *See Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003) ("To avoid a grant of summary judgment on a Title VII claim, a plaintiff must either provide direct evidence of discrimination or establish a *prima facie* case, which creates an inference of discrimination based on circumstantial evidence."). Further, even if a *prima facie* case were established by Plaintiff for either claim, Defendant has proffered legitimate, non-discriminatory and non-retaliatory explanations for the challenged employment actions at issue, *see* Defendant's Memorandum at 9-13 and 30-31, and supported these reasons with undisputed evidence. *See* Defendant's SUMF. At this point, to defeat the summary judgment motion, Plaintiff must show, through evidence in the record, that the proffered reasons were a pretext for racial discrimination and retaliation. Plaintiff has not set forth either argument or evidence satisfying this showing.

The Court's prior analysis of Plaintiff's failure to accommodate claim is essentially the same as that already discussed. Defendant has set forth undisputed evidence that it satisfied its duty with respect to the interactive process required by the Rehabilitation Act. Further, there is no evidence in the record upon which any reasonable conclusion can be reached that either Plaintiff's assignment to Ft. Knox was not a reasonable accommodation or that Plaintiff must have been assigned to Ft.

19

Campbell as the only possible reasonable accommodation. In the face of Defendant's motion for summary judgment and its SUMF, Plaintiff has offered no evidence or argument supporting her failure to accommodate claim, and Defendant is entitled to summary judgment on this claim.

## RECOMMENDATION

Based on the forgoing, it is respectfully RECOMMENDED that:

1) Plaintiff's motion for summary judgment (Docket Entry No. 87) be DENIED, and;

2) Defendant's motion for summary judgment (Docket Entry No. 135) be GRANTED and this case be DISMISSED WITH PREJUDICE in favor of Defendant as to all claims brought by Plaintiff.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge